David J. Kaloyanides SBN 160368
E: djpk@rt2counsel.com
**DAVID J.P. KALOYANIDES**
A PROFESSIONAL LAW CORPORATION
12403 Central Ave., Ste 902
Chino, CA 91710
T: (213) 444-5605/F: (213) 335-3525

Attorney for Defendant
Jermaine Wright

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 5:17-cr-00229-JGB-1 |
| ) | |
| Plaintiff, ) | DEFENDANT'S POSITION RE |
| vs. ) | SENTENCING AND OBJECTIONS TO |
| ) | PRESENTENCE REPORT AND |
| JERMAINE WRIGHT, ) | RECOMMENDATION; |
| ) | MEMORANDUM OF POINTS AND |
| Defendant. ) | AUTHORITIES |
| ) | |
| ) | Sentencing Hearing: 3 October, 2022 |
| ) | Hearing Time:     2:00 p.m. |
| ) | Courtroom:  Riverside 1 |
| ) |      Hon. Jesus G. Bernal |
| ) | |

Defendant Jermaine Wright by and through his attorney of record in this case, David J. Kaloyanides, hereby submits this Position re Sentencing and Objections to the Presentence Report and Recommendation and the accompanying Memorandum of Points and Authorities in support thereof.

Based on an analysis of the sentencing factors set forth in 18 U.S.C. §3553(a), including an analysis of the advisory Guideline sentencing range, Defendant submits

that the appropriate sentence in this case is 60 months prison, consisting of 21 months on Count 1 and the mandatory minimum of 60 months on Count 2, to run concurrently, to be followed by a term of Supervised Release of three years on each count, to run concurrently, and a special assessment of $200, which is mandatory. The Court should waive all fines as Mr. Wright lacks the ability to pay any fine at present and is unlikely to be able to pay a fine in the future.

Furthermore, the Court should recommend that Mr. Wright be evaluated by the Bureau of Prisons for participation in the 500-hour RDAP drug treatment program, as it appears Mr. Wright has abused cocaine. The Court should also recommend that the Bureau of Prisons evaluate Mr. Wright for designation to a Federal Medical Center to address his on-going psychiatric and mental health issues.

Defendant reserves the right to supplement the arguments in support of his sentencing position up to and including the date of sentencing.

Respectfully submitted,

Date:  20 September, 2022                    s/ *David J. Kaloyanides*
                                             David J. Kaloyanides
                                             Attorney for Defendant
                                             Jermaine Wright

# TABLE OF CONTENTS

Table of Authorities ................................................................................................... 4

Memorandum of Points and Authorities .................................................................... 6

   I.   Introduction ..................................................................................................... 6

   II.   Background Facts ............................................................................................ 6

   III.   Discussion ........................................................................................................ 9

      A.  Objections to the Presentence Report and Recommendation. ................. 9

         1.  Objections to the Factual Information in the PSR. ............................ 9

         2.  Objections to the Offense Level Calculation ..................................... 9

            a.  Paragraph 41: Application of 4-level Enhancement under §2C1.1(b)(3) .. 9

            b.  Paragraphs 51-53: Application of the 2-level Enhancement for Obstruction ........................................................................................... 12

            c.  Paragraphs 45, 54, 55, and 58: Computation of Offense Level ................ 14

            d.  Paragraphs 108-111: Ability to Pay a Fine ..................................... 15

         3.  Objections to the Criminal History Category calculation .............................. 15

      B.  The Mandatory Minimum Sentence is All that is Necessary to Achieve the Goals of Sentencing. ........................................................................................... 15

   IV.   Conclusion ..................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Gall v. United States*,
  552 U.S. 38, 128 S.Ct. 586, 69 L.Ed.2d 445 (2007). ....................................................15

*Kimbrough v. United States*,
  552 U.S. 85 (2007) ........................................................................................................15

*United States v. Benitez*,
  34 F.3d 1489 (9th Cir. 1994)..........................................................................................12

*United States v. McNally*,
  159 F.3d 1215 (9th Cir. 1998);......................................................................................12

*United States v. ReBrook*,
  58 F.3d 961 (4th Cir. 1995)............................................................................................10

*United States v. Richards*,
  674 F.3d 215 (3d Cir. 2012)..........................................................................................10

*United States v. Santos*,
  501 F. App'x 630 (9th Cir. 2012).............................................................................. 9, 11

*United States v. Zamora*,
  982 F.3d 1080 (7th Cir. 2020).......................................................................................10

*United Stats v. Mack*,
  159 F.3d 208 (6th Cir. 1998).........................................................................................10

**Statutes**

18 U.S.C. §3553(a) .................................................................................................... 5, 15

18 U.S.C. §666(a)(1)(B).....................................................................................................5

18 U.S.C. §844(i) ................................................................................................................5

*Other Authorities*

U.S.S.G. §2C1.1(a) ..............................................................................................................6

U.S.S.G. §2C1.1(b)(2) .........................................................................................................6

U.S.S.G. §2C1.1(b)(3) ..................................................................................................passim

U.S.S.G. §2K1.4 ..................................................................................................................7

U.S.S.C. §3C1.1 ............................................................................................... 7, 11, 12, 13

U.S.S.G. §3D1.4 ..................................................................................................................7

U.S.S.G. §5E1.2(a) ..................................................................................................... 14, 16

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The reasonable and just sentence that meets the parsimony provision of 18 U.S.C. §3553(a) mandating that any sentence imposed for a conviction must be sufficient but no greater than necessary to achieve all the goals of sentencing is a total sentence of 60 months. This sentence should consist of 21 months on Count 1 and the mandatory minimum of 60 months on Count 2, to run concurrently.

The offense conduct in this case is serious. Abusing the public trust as an elected official undermines confidence in the democratic foundations on which our governmental institutions are based. Attempting to destroy a commercial establishment through arson creates a substantial risk of danger not only to the property itself but potentially to human life as well. Punishment for this type of crime is necessary to send the clear message that such conduct will not be tolerated.

But punishment must be fair. The sentence imposed for any criminal offense must be sufficient but not greater than necessary to achieve all the goals of sentencing. *See* 18 U.S.C. §3553(a). In this case, the only constraint on the Court's discretion in crafting the fair and reasonable sentence is the mandatory minimum of 60 months on Count 2. And that is all that is needed here.

## II. BACKGROUND FACTS

On 21 February 2021, the Grand Jury returned a 2-Count Indictment charging Mr. Wright with violating 18 U.S.C. §666(a)(1)(B) (bribery of programs receiving federal funds) and 18 U.S.C. §844(i) (attempted arson of a building affecting interstate commerce). The charges in Count 1 stemmed from Mr. Wright's position as an

elected member of the Adelanto City Council and related to the City's zoning regulations for marijuana cultivating, transportation, and dispensary businesses under California's recently enacted marijuana laws. The charges in Count 2 involved Mr. Wright's restaurant business, Fat Boyz Grill, in Adelanto, which was the target of the attempted arson.

Trial began on 14 June, 2022. After six days of testimony, evidence, and argument, the jury found Mr. Wright guilty on both counts.

As the Court presided over the trial and pretrial proceedings including two separate competency hearings, and pretrial motions and motions in limine, the Court is well-aware of the facts of the case and the evidence adduced at trial. There is no need to reiterate the facts here. The Presentence Report's summary of the facts are generally accurate.

The United States Probation Office has recommended a sentence of 70 months on each count to be run concurrently followed by a three-year term of Supervised Release on each count, also to run concurrently. Probation's recommendation is the low-end of the advisory Sentencing Guideline sentencing range for a Total Adjusted Offense Level of 27 for Criminal History Category I.

The Presentence Report and Recommendation ("PSR") determined that for Count 1, the base offense level was 14 under U.S.S.G. §2C1.1(a) because Mr. Wright met the definition of "public official" as an elected member of the City Council and his position as Mayor Pro Tem. The PSR applied a 2-level enhancement under §2C1.1(b)(2) based on the evidence adduced at trial that Mr. Wright agreed to accept a bribe in excess of $6,500.00.

The PSR also applied a 4-level enhancement concluding that Mr. Wright held a "high-level decision-making or sensitive position" pursuant to U.S.S.G. §2C1.1(b)(3) because he was "both a City Council Member and also Mayor Pro Tem" and was "a member of the committee in charge of making decisions for the good of the public." (*See* PSR ¶41).

The PSR concluded that the total offense level for Count 1 was 20.

For Count 2, the PSR concluded the base offense level was 24 pursuant to U.S.S.G. §2K1.4 because Mr. Wright's restaurant was a "functioning restaurant…used by members of the public." (*See* PSR ¶47). The PSR applied a 2-level enhancement for obstruction of justice pursuant to U.S.S.C. §3C1.1. The PSR based the enhancement on two incidents. First, Mr. Wright made a statement to the Confidential Human Source about getting "shit away from [my] door" and to find someone to assault Wright so he could feign memory loss "which [Wright] believed would get him out of the 'situation with the FBI' who were investigating the attempted arson. Second, Mr. Wright claimed to have been assaulted "under circumstances siliar to, if not identical to" the conversation about a staged assault with the Confidential Human Source. (*See* PSR ¶¶52-53).

The PSR determined the total offense level for Count 2 was 26.

The PSR increased the offense level to 27 based on the the Multiple Count Adjustment purusant to U.S.S.G. §3D1.4(a), (b), and (c).

The PSR determined that Mr. Wright had no criminal history points placing him in Criminal History Category I. At offense level 27, Criminal History Category I, the Sentencing Guideline sentencing range is 70-87 months.

III. DISCUSSION

A. OBJECTIONS TO THE PRESENTENCE REPORT AND RECOMMENDATION.

1. Objections to the Factual Information in the PSR.

Paragraph 31. The PSR is incorrect that Mr. Wright had no visible injuries. As was demonstrated at trial, Mr. Wright did have visible injuries. One of the government's lay witnesses, Lavell Garrett, who was present at the time Mr. Wright was found outside his restaurant on 3 November, testified that he saw Mr. Wright's injuries on his face and head.

Paragraph 71. Mr. Wright was interviewed by Probation on 12 August, 2022.

2. Objections to the Offense Level Calculation

a. Paragraph 41: Application of 4-level Enhancement under §2C1.1(b)(3)

The evidence does not support a finding that Mr. Wright falls within the definition of a person in a "high-level decision-making or sensitive position" as required by U.S.S.G. §2C1.1(b)(3). The PSR's statement that the 4-level enhancement applies "if the offense involved an elected public official or any public official in a high-level decision-making or sensitive position" is not correct. The fact of being a public official does not alone meet the requirement. In fact, the enhancement can apply to persons who are not in any governmental office or elected position. (*See, e.g.* U.S.S.G. §2C1.1(b)(3), App. Note 4(a) & (b) (identifying prosecuting attorneys ad agency administrators as examples of persons with "high-level decision-making" authority, and jurors and law enforcement officers as persons possibly holding sensitive positions)). The only basis on which the PSR bases applyiing the enhancement is that Mr. Wright "was a member of the committee in charge of

9
DEFENDANT'S POSITION RE SENTENCING

making decisions for the good of the public." This is not sufficient evidence to support the enhancement.

In an unpublished decision, the Ninth Circuit explained that the purpose of the enhancement was to address high-level corruption, not just where one is a publicly elected official.

> As opposed to the base-level for all public officials, U.S.S.G. § 2C1.1(b)(3) applies a 4-level increase to *all* defendants involved in a crime of high-level corruption, whether a public official or otherwise. Thus, the distinct harm at which § 2C1.1(b)(3) is aimed is the corruption of high-level public officials as distinct from an individual official's breach of the public trust.

*United States v. Santos*, 501 F. App'x 630, 8-9 (9th Cir. 2012).[1]

Other Circuit Courts of Appeal have held that the determination of whether a defendant meets the criteria under §2C1.1(b)(3) is based on the specific facts of the case.

> A district court must determine, based on the facts, whether the defendant possesses "direct authority to make decisions" for a government entity. Similarly, the facts will guide a district court's determination whether a defendant exercises "substantial influence over the decision-making process." § 2C1.2(b)(3) cmt. n.3.

---

[1] No published Ninth Circuit cases have been uncovered that interpret this section of the United States Sentencing Guidelines or provide more analysis of the definition of "high-level decision-making or sensitive position" as it applies for this enhancement.

10
DEFENDANT'S POSITION RE SENTENCING

*United States v. Richards*, 674 F.3d 215, 220 (3d Cir. 2012); *see also United States v. Zamora*, 982 F.3d 1080, 1084 (7th Cir. 2020) ("Whether an individual is a public figure in a high-level decision making or sensitive position is a factual dtermination, reviewable for clear error."); *United Stats v. Mack*, 159 F.3d 208, 220 (6th Cir. 1998) (reviewing district court's application of public offician in high-level decision-making or sensitive position enhancement for clear error); *United States v. ReBrook*, 58 F.3d 961, 969 (4th Cir. 1995) (reasoning that the high-level decision-making or sensitive position enhancement is reviewed for clear error because it "turns primarily on fact").

Of note in *Richards*, the Court emphasized that the analysis of §2C1.1(b)(3) involves the question whether the defendant possessed "direct authority to make decisions" for a government entity or exercised "substantial influence over the decision-making process." (*See Richards, supra*; U.S.S.G. §2C1.1(b)(3), App. Note 4(a)).

Mr. Wright was one of five City Council Members. He was one of several committee members involved in reviewing zoning and licensing applications. He had no direct authority to make decisions for the committee or the City Counsel as all decisions were put to a vote requiring a simple majority. He alone had no decision-making authority let alone "high-level" authority. Nor does the evidence suggest that he had "substantial influence over the decision-making process." There was no evidence that any other council member or committee member was under his sway or in any way beholden to him. There was no evidence that Mr. Wright held any particularly persuasive power over any of the other member of the City Council or the committee because the other members—namely Mayor Richard Kerr—had their own voting blocks and were themselves already soliciting and accepting bribes for their votes. The most that can be said of Mr. Wright, is that the payments he took were to

11
DEFENDANT'S POSITION RE SENTENCING

buy his vote and his vote alone. But one vote was not enough. It is not the type of high-level corruption contemplated by the enhancement. Mr. Wright's position was nothing more than "an individual official's breach of the public trust." *See Santos, supra*, 501 F. App'x 8-9.

The 4-level enhancement does not apply here.

b. *Paragraphs 51-53: Application of the 2-level Enhancement for Obstruction*

The evidence does not support application of the 2-level enhancement for obstruction because the conduct upon which the PSR relies for the enhancement was not directed at the offense conduct itself and did not, nor could it, impede or otherwise affect the investigation. There are two events or incidents of conduct the PSR relies upon as obstruction. The first is the the conversation between Mr. Wright and the Confidential Human Source where Mr. Wright asks him to arrange for someone to assault him so he can feign memory loss. The second is the following day where Mr. Wright claims to have been assaulted outside his restaurant which the PSR describes as "under circumstances similar to, if not identical to" the prior discussion about a staged assault. (PSR ¶53).

For U.S.S.C. §3C1.1 to apply, the obstruction or attempted obstruction must impede or try to impede the investigation. Application Note 4 to §3C1.1 provides a non-exhaustive and non-exclusive list of examples that are illustrative of the type of actions for which the enhancement should apply. None of the examples in the Application Note are similar to Mr. Wright's conduct here.

The closest example is Application Note 4(g)—providing a materially false statement to law enforcement "that significantly obstructed or impeded the official

DEFENDANT'S POSITION RE SENTENCING

investigation." Staging an assault in order to support a claim of memory loss would constitute a false statement to law enforcement (if the claim was made to law enforcement). That false statement might be material if the feigned memory loss was that of a third-party witness and not the defendant and actually impeded the investigation. Unless the statement is made under oath, a false statement to law enforcement "must constitute an actual impediment, rather than a mere attempt to impede the investigation." *See United States v. McNally*, 159 F.3d 1215, 1217 (9th Cir. 1998); *see also United States v. Benitez*, 34 F.3d 1489, 1497 n.6 (9th Cir. 1994).

The obstruction enhancement does not apply to statements made by the defendant that are not under oath and not perjurious when related to defendant's acknowledgement of the crime.

> A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision.

U.S.S.G. §3C1.1, App. Note 2.

Staging an assault so Mr. Wright could feign memory loss did not impede the investigation in any way. Law enforcement already had an undercover agent who had posed as the arsonist, another who posed as someone trying to bribe Mr. Wright, and the Confidential Human Source who, among other things, was the person with whom Wright discussed staging the assault. Nearly all the meetings and conversations were recorded. Mr. Wright's plan to stage an assault and the assault the following day had no effect on the investigation if for no other reason that law enforcement knew the truth ahead of time.

The most that can be said about Mr. Wright's discussions with the Confidential Human Source and the plan to stage the assault is that it would give Mr. Wright an excuse why he couldn't cooperate and assist law enforcement—something he had no legal obligation to do in the first place. Whether Mr. Wright merely asserted his Constitutional right to remain silent or falsely claimed he couldn't assist, the effect would be the same. Law enforcement would still have to gather sufficient evidence to bring charges against him. The government bore the burden of proving Mr. Wright's guilt beyond a reasonable doubt. By 2 November, the investigation was nearly concluded, for Mr. Wright was arrested five days later. (*See* Arrest Warrant Returned Executed 11/7/17, Dkt. No. 6). Law enforcement proceeded just as it would have. Mr. Wright's silence, regardless of the reason, made no difference.

Nor could it.

The Obstruction enhancement does not apply.

c. *Paragraphs 45, 54, 55, and 58: Computation of Offense Level*

For Count 1, because the 4-level enhancement under §2C1.1(b)(3) does not apply, the offense level is 16, not 20.

For Count 2, because the 2-level enhancement under §3C1.1 does not apply, the offense level is 24, not 26.

For calculating the Multiple Count adjustment, however, there still remains a difference of 8 levels between Counts 1 and 2, leaving the number of units at 1.5 as set forth in the PSR. While the PSR correctly calculated that a 1-level Multiple Count adjustment applies, the Total Adjusted Offense Level should be 25, not 27.

d. *Paragraphs 108-111: Ability to Pay a Fine*

The PSR is disingenous when it states that Mr. Wright failed to comply with providing the requested financial information. While he has not yet completed the forms, the only reason this information was not provided during his interview was because the Probation Officer ran out of time for the VTC interview and did not seek to set up a follow up interview. Multiple VTC sessions for presentence interviews has not been unusual during the COVID-19 pandemic. And while defense counsel offered to try to get this information, counsel has encountered other difficulties in meeting with Mr. Wright, including his transfer between jail facilities without any notice to counsel.

Moreover, Probation has the ability to perform searches of Accurint databases for assets and liabilities without the need of signed release forms.

Most notably absent from the PSR is the fact that Mr. Wright has be represented by appointed counsel for the entire five years the case has been pending. Qualifying for appointed counsel is a significant indicator that a defendant is unable to pay any fine. (*See* U.S.S.G. §5E1.2(a), App. Note 3).

3. <u>Objections to the Criminal History Category calculation</u>

Mr. Wright has no objections to the calculation of his Criminal History Category.

For offense level 27 at Criminal History Category I, the correct Sentencing Guideline sentencing range is 57-71 months.

B. THE MANDATORY MINIMUM SENTENCE IS ALL THAT IS NECESSARY TO ACHIEVE THE GOALS OF SENTENCING.

Sentencing begins with the correct calculation of the applicable Sentencing Guidelines Sentencing range. That sentencing range is the starting point, the "initial benchmark" for the sentence. *See Gall v. United States*, 552 U.S. 38, 39, 128 S.Ct. 586, 69 L.Ed.2d 445 (2007). That sentence, whether a within the Guidelines or without, must be sufficient but no greater than necessary to accomplish the sentencing goals of the sentencing statutes. *See Kimbrough v. United States*, 552 U.S. 85, 91 (2007).

The severity of the two counts of conviction—breach of the public trust by accepting bribes as an elected official and attempting to destroy or damage one's own business through arson—cannot be taken lightly. Punishment is necessary. Promoting respect for the law not only for the one convicted but for society over all is particularly important when it comes to elected officials and when the conduct involves the risk of harm to human life. All the goals of sentencing in this case are addressed by the mandatory minimum 60 months the Court must impose on Count 2.

For Mr. Wright, who has never had any prior law enforcement contacts, who has never spent any time in custody, five years in prison is a substantial sentence. When the 3-year term of Supervised Release is added to the analysis, Mr. Wright will be subject to this sentence in one form or another for 8 years. Whether or not the 60 month mandatory minimum exceeds §3553(a)'s parsimony provision in this case, it is the least custodial sentence the Court can impose under the law. And it is all that should be imposed. It is more than sufficiently punitive for this first-time offender. It communicates the need for members of our society to respect the law—particularly our elected officials in whom is entrusted the well-being of the People. But it also provides the necessary rehabilitation opportunity for Mr. Wright—specifically treatment for his on-going medical and mental health issues that have arisen

throughout this case as well as the opportunity for substance abuse treatment, which appears to have afflicted him in the past.

The Court should impose a 21-month sentence on Count 1, which corresponds to a low-end Guideline based sentence at Offense Level 16 for Criminal History Category I, without any Multiple Count adjustment. No additional time is necessary on this Count as the Court must impose 60-months on Count 2.

And the sentence on each count should run concurrently.

The Court should order that all fines are waived. Whether or not Mr. Wright has timely completed the financial information requested by Probation, the fact that Mr. Wright has been represented by appointed counsel during the entire five-years this case has been pending is a significant indicator of his inability to pay a fine. (*See* U.S.S.G. §5E1.2(a), App. Note 3). Furthermore, Mr. Wright is facing a substantial prison sentence. He is 46 years old. His prospects for securing employment that would provide him with income beyond his basic necessities and what he will need to re-establish himself in the community upon his release are tenuous at best.

Therefore, no fine should be imposed.

IV.  CONCLUSION

For these reasons, the Court should impose a total sentence of no more than 60 months, consisting of 21 months on Count 1 and 60 months on Count 2, to run concurrently, followed by a total term of Supervised Release of 3 years, the mandatory special assessment of $200, and order all fines be waived as Mr. Wright lacks the present ability to pay any fine and is unlikely to become able to pay a fine in the future.

Furthermore, the Court should recommend that the Bureau of Prisons evaluate Mr. Wright for placement at a Federal Medical Center to address his on-going medical and mental health issues.

Finally, the Court should recommend that the Bureau of Prisons evaluate Mr. Wright for participation in the 500-hour RDAP drug treatment program, as it appears Mr. Wright struggled with substance abuse in the past.

Respectfully submitted,

Date:  20 September 2022              s/ *David J. Kaloyanides*
                                     David J. Kaloyanides
                                     Attorney for Defendant
                                     Jermaine Wright